Wanamaker, J.
This is a suit in quo warranto, originally filed in the supreme court of Ohio by the relators, Samuel Ach and others, for the purpose of determining the respective rights of the relators and the defendants to be and constitute the board of education of the school district of the city of Cincinnati.
Two questions are here involved:
1. Is the Jung small school-board bill, as it is popularly known, as found in Sections 4698 to 4707, inclusive, and 4745, 4949, .4992 and 4997 of the General Code of Ohio, constitutional?
2. Whether or not the proceedings had by the *244 large, or old, school board of Cincinnati were regular and valid under and pursuant to said sections so as to make the small school board, composed of the relators, a legal and valid board ?
Excepting Sections 4949 and 4992, General Code, the foregoing sections were passed May 2, 1913.
The defendants claim that the Jung school-board act is unconstitutional by reason—
1. That it violates Section 26 of Article JI of the Constitution, which reads: “All laws, of a general nature, shall have a uniform operation throughout the state.” It is admitted of course that legislation pertaining to the public schools of Ohio is of a general nature and must have a uniform operation throughout the state. Does the Jung act violate this provision? It is claimed by the defendants that it does wherein it attempts to classify city school districts. That the legislature has the right to classify school districts as much as it has to classify municipalities, so long as it is agreeable to the constitution, there can be no doubt. That has been so often held in so many cases that it would be superfluous'to give any Ohio citations in support of it.
What is the classification provided for in these sections ?
First class: City districts having a population of less than fifty thousand persons.
Second class: City districts having a population of fifty thousand persons but less than one hundred and fifty thousand persons.
Third class: City districts having a population of one hundred and fifty thousand persons or more.
It would seem that some classification was nec *245 essary in order that the legislature shall properly exercise its functions under Article VI, Section 3, of the Constitution, which provides: “Provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds.” Manifestly an organization for a village school district should be radically different from the city school district in the larger cities of the state, and for that purpose a proper classification is essential. Our courts have repeatedly held that the matter of classification based on population is a proper standard, so long as such classification is not a false, unnecessary, arbitrary and evasive one. See Board of Health v. City of Greenville, 86 Ohio St., 1.
Now, can it be fairly said that these lines and limitations of fifty thousand, of one hundred and fifty thousand and those in excess of one hundred and fifty thousand are arbitrary, unreasonable and evasive ?
All the courts of all the states, including the federal courts as well, have laid down the sound rule that a legislative enactment is presumed in law and in fact to be constitutional; that such acts should not be declared unconstitutional by a court unless they be “clearly” so. Some of the courts have used the words “unless it be unconstitutional beyond a reasonable doubt.” Inasmuch as the Jung act operates uniformly upon all school districts in excess of one hundred and fifty thousand population, to-wit, Cleveland, Cincinnati, Columbus and Toledo, how can it be said that it is “clearly-unconstitutional” upon that ground?
*246 2. The second objection raised by the .defendants-to the constitutionality, of the-act. relates ,to the “referendum” provision of the various sections of the act. These sections are as follows: • Section 4704, Section 4705, Section 4706 and Section 4707. The section specially complained of is Section 4705' which reads: “Said commission shall prepare and submit to the electors at the next general school election, if one occur not less than one hundred and twenty,days after the. passage of said resolution, otherwise, at the second general school election, Two or more plans for the organization of .the .board of’ education in such district, but in.no event shall less than two plans be submitted. Each plan shall provide for the number :of members, the length of term of the members and the organization of .the board; one plan so submitted shall provide for a board of-the same number and of the same organizations as the board existing in said district at the-time of -said election. Said plans shall be submitted to the elect-' ors of said district on a.separate ballot, bearing no . party designation and in such form as said commission may determine.”
Now, the act was. approved May 2, 1913. Being-subject to the general, referendum provision of the-constitution- it could not become a law until ninety days had elapsed, which would .be - substantially1 August 1, 1913.
Sections 4704 and 4705 provide for. ^..appointment of a commission of seven members to.prepare and submit to the electors at the riext general school election “if dne occur not less than one hundred and twenty days after the passage of said resolution, *247 otherwise, at the second general school election,” etc. The particular grievance of the defendants, which is alleged as the basis of the claim of unconstitutionality concerning the referendum provisions of the act, is that the one hundred and twenty days’ limitation, within which the referendum may not be held, renders by its own force these1 sections unconstitutional.
The constitutional provision relating to such a Referendum is' as follows: “Article VI, Section 3: 1 Provision shall be made by law for the organization,-administration and control of the public school system of the state supported by public funds: provided, that each school district embraced wholly or in-part within any city shall have the power by referendum vote to determine for itself the number of members and the organization of the district board ■of education, and provision shall be made by law ■ for the exercise of this-power by such school dis- ■ tricts.”
• Now, it has always been recognized as a proper exercise of legislative power for the legislature to determine for itself when the act or part thereof - shall] go into effect. This the legislature undertook to do by-putting into the act the “one hundred and ■ twenty ..day”'provision. The only limitation upon the legislature in this behalf would be a constitu- ■ t-ional limitation, and there is' none suggested in this ..case-
The. mere, suggestion by counsel that this necessarily carries a referendum election beyond the time of the-first regular November-election for members of the school' board cannot be used as the- basis of- a *248 claim of unconstitutionality. Statutes cannot be held unconstitutional upon the ground that somebody disagrees with the legislature as to the time at which an act should take effect. The legislature is presumed to have acted in good faith, and there is nothing in the record to overcome that presumption.
The legislature may well have concluded that the fact that the late date at which such act could go into effect under the general referendum provision, to-wit, August I; that the time allotted for the resolution by the old board of education fixing the membership of the new, to-wit, thirty days additional ; the time allotted for the appointment of a proper commission to submit plans; the time allotted for proper consideration by such committee of the matters pertaining to a proper membership and a proper organization of the district board, together with adequate time for the consideration of such plans so submitted to the electors of the city district—that all these things combined might readily, and indeed would, require that a referendum election on such important concerns of the voters of such a city school district would necessitate a postponement of such election at least one hundred and twenty days that the work might be wisely and well done. The legislature did nothing more nor less than to authorize the old board, as they had a right to do, to fix the membership of the new temporarily, until such referendum election could be held agreeably to the provisions of the statute.
We are unable to see here any valid objection so far as the constitutionality is concerned. The language of the constitution touching the referendum *249 is: “Provided, that each school district * * * shall have the power by referendum vote to determine for itself the number of members and the organization of the district board of education, and provision shall be made by law for the exercise of this power,” etc.
It is obvious that this provision of the constitution does not require that, before any change shall be made in the old board, a referendum shall be provided determining what change shall be made. The change in membership is provided under the general exercise of legislative power, while the referendum is provided for under the new constitutional amendment and the new Jung school-board act passed pursuant to such new constitutional provision. The constitutional provision granted the legislature the power to provide by law for the exercise of the referendum power.
This the legislature has done agreeable to the constitution.
The change made by the Jung school-board act is subject to be unmade by the referendum sections of said act at the next ensuing school-board election.
We hold that the Jung school-board act is entirely agreeable to the referendum provision of the constitution.
We come now to consider some of the questions as to whether or not the old board of education under the foregoing sections of the General Code, known as the Jung small school-board act, with a view of determining whether or not there is any basis for the claim made by the defendants that the small board, so called, is invalid and illegal by *250 reason of the old or large board failing to act regularly and lawfully, pursuant to the various sections of such act.
A great many questions are made in the briefs of the defendants, but the only ones meriting-serious consideration are the two following:
1. Was the meeting of the old board of'education held on August 30, at which the resolution was - passed fixing the number of members of the smallJ board at seven, a legal and valid meeting ?
Objection is made to this meeting' upon the ground that it was not a regular meeting .of the board, and if a special meeting, the statutory notice ' to each and every member of the board* was'not ■ given pursuant to law. ! ' .
2. That the record discloses that a majority of ■ the entire board did not vote for such resolution.
As to the first objection we believe that the meet- ' ing might be cohsidered either an adjournment of the regular meeting or a special meeting. But in either event, each and every member had notice of the meeting by reason of the fact that copies of the: minutes of each previous meeting had been regu1 larly mailed to the proper address of each and 'every member of the board. The • presumption ofy course follows that they received the notice,'and' there is nothing in the record to the contrary:
As to the second objection, Section 4752, General - Code, settles that question. This section-reads : ■ “A majority of the members of a board of education shall constitute a quorum for the transaction1 of business. ■ Upon a motion to adopt a-resolution ' authorizing the purchase or sale of real or personal * *251 "property or to employ a superintendent' or teacher, ■'janitor or other employe or to elect or appoint an "officer * * * the clerk of the board shall publicly call the roll of the members composing the board and enter bn the record the names of those voting ‘aye’ and the names of those voting ‘no.’ . If a - majority of'all the members of the board vote ‘aye,’ the president shall declare the motion carried,” etc. The statute having provided that in certain cases a majority of the entire membership is necessary to pass.certain motions or resolutions, the inference is very clear that as to all matters, motions or resolutions other than those specially mentioned in the . statute a> majority of the quorum is sufficient. Indeed-this is an elementary rule of-parliamentary ■'law. The agreed facts admit that there was a. ma-j’brity of the .quorum voting for the resolution'providing for a membership of seven for the small board. This action was afterwards read and approved at the next meeting on September 10, 1913, With nineteen members present. Obviously, the proceedings of boards of education, of county commissioners, township trustees and the like, must not ■ be judged by the same exactness and precision as would the journal of a court.
But in this case there can be no doubt from the -record that the meeting held on August 30, 1913, ■ at 8 o’clock, was regularly called, that proper notice ' was given to' each and every member of the board, agreeably to the statute, and • that the. action of i such board with reference to fixing the membership of the new or small school board was regular and legal.
*252 There are many other questions presented by the record and'briefs of counsel, but we do not deem them of sufficient importance to merit any further discussion.

Writ allowed.

Nichols, C. J., Shauck, Johnson, Donahue, Newman and Wilkin, JJ., concur.